## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHAWLONDA HALLBACK,

      Plaintiff,

v.                          Case No: 8:21-cv-1028-WFJ-SPF

CARRINGTON MORTGAGE
SERVICES, LLC,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on Defendant Carrington Mortgage Services, LLC's Motion to Dismiss, Dkt. 19, Plaintiff Shawlonda Hallback's Amended Complaint, Dkt. 8. Plaintiff filed a response in opposition, Dkt. 20. Upon careful consideration, this Court grants Defendant's motion.

## BACKGROUND

In September 2016, Plaintiff executed a note and mortgage (collectively, the "Loan") in favor of Defendant for the refinancing of her home. Dkt. 8, Ex. A. The principal amount of the Loan was $202,952.00. *Id.* at 1. Under the terms of the Loan, Plaintiff agreed to pay "the principal of, and interest on, the debt . . . and any prepayment charges and late charges," as well as "funds for Escrow items[.]" *Id.* at

3. The Loan also contained a provision allowing Defendant or its agent to "make reasonable entries upon and inspections of" the subject property. *Id.* at 5.

Plaintiff contends that from late September 2016 through November 2019 she made monthly payments in the approximate amount of $1,139.42, with $954.36 of each payment going toward the principal. Dkt. 8 ¶ 14. Without stating what Defendant reported the unpaid principal amount to be in November 2019, Plaintiff claims that these payments should have lowered her unpaid principal amount to $166,686.32 as of that month. *Id.* ¶ 15.

On January 29, 2021, Plaintiff executed a Loan Modification Agreement in favor of Defendant. Dkt. 8, Ex. B. The Loan Modification Agreement listed the Loan's original principal amount of $202,952.00, an unpaid principal amount of $188,942.48, and a new principal amount of $203,374.45. *Id.* at 1. The terms of this agreement required Plaintiff to make monthly mortgage payments of $1,210.86 on the first day of each month. *Id.* at 2. Of that monthly amount, $921.26 would go toward the principal and interest, and the remaining $289.60 would apply to property taxes, hazard insurance, and any other permissible escrow items. *Id.*

Though the January 2021 Loan Modification Agreement listed Plaintiff's unpaid principal amount as $188,942.48, Plaintiff states that subsequent documents show higher unpaid principal amounts. According to Plaintiff, this is partially due

to Defendant charging her account for unauthorized inspection fees in June 2021. Dkt. 8 ¶ 32 (citing Dkt. 8, Ex. N). Plaintiff also points to two separate credit reports dated July 26, 2021, which she claims reflect inconsistent principal amounts. *Id.* ¶¶ 20−21. Plaintiff alleges that one of the credit reports showed an unpaid principal amount of $197,096.00, while the other indicated that her account had been closed with a charge off amount of $200,071.00. *Id.* (citing Dkt. 8, Exs. F & G). Plaintiff states that, before receiving the credit reports, Defendant sent her a letter dated July 16, 2021, showing her unpaid principal amount to be $198,644.58. *Id.* ¶ 22 (citing Dkt. 8, Ex. H). Plaintiff asserts that these discrepancies render her unable to determine how much money she still owes to Defendant. *Id.* ¶ 23.

In addition to these contentions, Plaintiff alleges that Defendant reported negative and incorrect information to credit reporting companies when Plaintiff's Loan entered forbearance, thereby defying the requirements of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *Id.* ¶ 24. Plaintiff also states that, though Defendant's records show that Plaintiff made monthly mortgage payments, Defendant informed her in September 2021 that she had failed to make any mortgage payments since March 2021. *Id.* ¶ 26 (citing Dkt. 8, Ex. J).

However, Plaintiff states that she is unsure if Defendant even owns and/or services her Loan. *Id.* ¶ 27. Plaintiff contends that she received a Notice of Sale from Defendant in February 2021 indicating that Defendant sold her Loan to Bank

United on February 2, 2021. *Id.* ¶ 28 (citing Dkt. 8, Ex. K). Plaintiff states that she then received a second Notice of Sale dated March 16, 2021, showing that her Loan was sold back to Defendant on March 12, 2021. *Id.* ¶ 29 (citing Dkt. 8, Ex. L). She then points to a third Notice of Sale dated March 18, 2021, which showed her Loan was sold to Defendant on March 18, 2021. *Id.* ¶ 30 (citing Dkt. 8, Ex. M). Plaintiff seems to allege that the second and third Notices of Sale indicate that Defendant—not Bank United—sold the Loan back to itself despite not owning the Loan at the time, thereby rendering the sale invalid. *Id.* ¶ 31.

    After initially proceeding pro se, Plaintiff retained counsel who filed an eight-count Amended Complaint against Defendant based on the above factual allegations. In Counts I and II, Plaintiff alleges breach of contract and breach of the duty of good faith and fair dealing, respectively. *Id.* at 9−12. In Count III, Plaintiff alleges a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). *Id.* at 12−13. Next, Count IV asserts violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"). *Id.* at 13−15. Count V claims violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), while Count VI asserts a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). *Id.* at 15−19. In Count VII, Plaintiff alleges a violation of the Florida Deceptive and Unfair Trade Practices, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"). *Id.* at 19−21. Lastly, Count

VIII asserts a violation of the Truth in Lending Act, 15 U.S.C. 1601 *et seq.* ("TILA"). *Id.* at 21−22.

Defendant now moves to dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. Dkt. 19.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Id.* In considering a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The Court should limit its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## ANALYSIS

### Count I: Breach of Contract

To state a claim for breach of contract under Florida law, a plaintiff must allege (1) the existence of a valid contract, (2) a material breach of that contract,

and (3) damages resulting from the breach. *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, 513 F. Supp. 3d 1350, 1357 (M.D. Fla. 2021). Plaintiff contends that Defendant "on multiple occasions failed to apply Plaintiff's payments per the terms of the Mortgage and Modification Agreement." Dkt. 8 ¶ 55. She also alleges that Defendant "misrepresented amounts due" under both documents, charged unwarranted inspection fees, and has "purposefully continue[d] to refuse to honor its obligations under the contract." *Id.* ¶¶ 56, 58.

Defendant asserts that Plaintiff does not sufficiently allege any incidents of Defendant breaching a certain provision of the Loan or Loan Modification Agreement. Dkt. 19 at 5−6. Defendant further contends that Plaintiff failed to satisfy a condition precedent to bringing a breach of contract claim, as Paragraph 20 of the Loan requires Plaintiff to provide Defendant with notice and an opportunity to cure an alleged breach of the Loan prior to pursuing judicial action. *Id.* at 7−8.

As a preliminary matter, Plaintiff's Loan makes clear that Plaintiff must provide Defendant with notice of any alleged breach of the Loan and a reasonable period to cure that breach prior to bringing a lawsuit. Dkt. 8, Ex. A at 8. In her response to Defendant's Motion to Dismiss, Plaintiff states that paragraphs 59 and 67 of her Amended Complaint allege her compliance with the Loan's notice and cure provision. Dkt. 20 at 7−8. The Court disagrees. Paragraph 59 is merely a

6

conclusory statement that asserts that Plaintiff has performed all of her obligations under her Loan. Dkt. 8 ¶ 59. District courts do not accept conclusory allegations as true in deciding motions to dismiss. *Iqbal*, 556 U.S. at 663−64 (2009). Plaintiff's reliance on paragraph 67 is equally unavailing, as this is not an allegation within Count I. Found under the Count III RESPA claim, paragraph 67 alleges that Plaintiff has satisfied RESPA's notice of error requirement by notifying Defendant of its servicing and accounting errors. Dkt. 8 ¶ 67.

Plaintiff also points to a letter from Defendant attached to her Amended Complaint, positing that the letter's language allows for the inference that Defendant was replying to her notice of breach. Dkt. 20 at 8. However, at no point in her Amended Complaint does Plaintiff make this allegation or otherwise suggest that this letter implicitly shows her compliance with the Loan's notice and cure provision. Plaintiff has therefore not sufficiently alleged compliance with the condition precedent set forth in Paragraph 20 of the Loan, and Count I must be dismissed for failure to state a claim.

## Count II: Breach of Duty of Good Faith and Fair Dealing

Under Florida law, the implied covenant of good faith and fair dealing exists in conjunction with every contract. *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1263 (M.D. Fla. 2013) (quoting *Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997)). This implied duty is not an independent term of a

contract that may be asserted as a source of breach when all other terms of the contract have been met. *Gibson v. Chase Home Fin., LLC*, No. 8:11-cv-1302-T-23TBM, 2011 WL 6319401, at *5 (M.D. Fla. Dec. 16, 2011). Accordingly, an action for breach of the duty of good faith and fair dealing "cannot be maintained in the absence of a breach of an express contract provision." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999).

Given Plaintiff has not sufficiently pled a breach of contract claim in Count I, she has not shown that her claim for breach of the duty of good faith and fair dealing is connected to a breach of contract. Count II is therefore dismissed.

## Count III: RESPA Violation

Plaintiff next asserts a violation of Regulation X, 12 C.F.R. § 1024.35(e), which implements RESPA. Regulation X, in part, specifies how servicers of a federally related mortgage loan shall handle a borrower's notice of error. 12 C.F.R. § 1024.35(e). The Eleventh Circuit explained that a borrower has a private right of action to sue a servicer under RESPA if the servicer fails to comply with § 1024.35(e) of Regulation X. *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2013). Plaintiff claims that Defendant violated § 1024.35(e) by failing to respond to Plaintiff's "multiple correspondence alleging that [Defendant] made errors[.]" Dkt. 8 ¶¶ 67−68.

Under Regulation X, a servicer must adhere to specific requirements when it

receives a notice of error from a borrower who believes a mistake has occurred in the servicing of his or her loan. 12 C.F.R. § 1024.35(e). A qualified written request ("QWR") constitutes a notice of error for purposes of RESPA. *Id.* § 1024.35(a). RESPA defines a QWR as a written correspondence that (1) enables the servicer to identify the borrower's name and account and (2) includes a statement explaining why the borrower believes his or her account is in error or provides sufficient detail regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). Upon receiving a QWR, a servicer must conduct a reasonable investigation into the matter and, within thirty business days, either (A) correct the errors identified by the borrower and notify the borrower in writing of the corrections or (B) notify the borrower that no error has occurred and provide an explanation for that conclusion. 12 C.F.R. § 1024.35(e)(1)(i).

To state a claim under RESPA for failure to respond to a notice of error, a plaintiff must establish the following: (1) the defendant is a loan servicer; (2) the defendant received a QWR from the plaintiff; (3) the QWR relates to the servicing of a mortgage loan; (4) the defendant failed to adequately respond to the QWR; and (5) the plaintiff is entitled to actual or statutory damages. *Munoz v. CitiMortgage, Inc.*, No. 8:20-cv-2311-VMC-AEP, 2021 WL 1814650, at *2 (M.D. Fla. May 6, 2021) (quoting *Porciello v. Bank of Am., N.A.*, No. 8:14-cv-1511-EAK-AEP, 2015 WL 899942, at *3 (M.D. Fla. Mar. 3, 2015)). Defendant states

that Plaintiff cannot satisfy these elements, as she has not alleged that she sent Defendant a QWR. Dkt. 19 at 9–10. The Court agrees.

Plaintiff's Count III does not adequately allege that Defendant received a QWR from Plaintiff. Simply stating that Plaintiff sent Defendant "multiple correspondence alleging [Defendant] made errors" is insufficient. While Plaintiff responds that Defendant's aforementioned letter is clearly a response to Plaintiff's QWR, Dkt. 20 at 8–9 (citing Dkt. 8, Ex. H), this allegation is absent from her Amended Complaint. Moreover, that letter explicitly states that Defendant found Plaintiff's correspondence failed to qualify as a QWR under RESPA or relevant case law. Dkt. 8, Ex. H. Plaintiff's Amended Complaint ultimately fails to state a claim under RESPA. Count III is dismissed.

**Count IV: FCCPA Violation**

In Count IV, Plaintiff asserts a violation of section 559.72(9) of the FCCPA, which regulates consumer debt collection in Florida. This section specifically provides that no person collecting consumer debts shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). Defendant contends that Plaintiff has failed to sufficiently allege any debt collection activity that would trigger the FCCPA. Dkt. 19 at 11. Defendant also asserts that Plaintiff's debt is legitimate, and

10

Plaintiff appears to merely be confused by the monthly mortgage statements,
notices of payments, and other documents she attached to her Amended Complaint.
*Id.* at 11−12.

Plaintiff's Count IV fails to state a claim under the FCCPA. Plaintiff does
not sufficiently allege that Defendant engaged in debt collection activity proscribed
by the statute. Instead, Plaintiff repeatedly makes the conclusory allegations that
Defendant attempted to "collect" a debt it knew to be illegitimate. Dkt. 8 ¶¶ 73−75.
As previously explained, such conclusory allegations are not considered by the
Court. Plaintiff also claims that Defendant "refused to credit [her] mortgage
payments when they were received in violation of Section 559.72(a)[.]" *Id.* ¶ 76. It
is not clear which section Plaintiff is referencing, as there is no section 559.72(a)
under the FCCPA, nor is there any FCCPA provision expressly providing that
mortgage payments must be credited upon receipt. The Court notes that Plaintiff
repeats this allegation under her Count VIII TILA claim, and understandably so;
TILA regulations specifically state that a servicer must credit a periodic payment
to a consumer's account on the date the payment is received. *See id.* ¶ 124; 12
C.F.R. 1026.36(c)(1)(i).

Though Plaintiff's Amended Complaint includes many exhibits, such as
mortgage statements, letters, and payment histories, Plaintiff references none of
these in her FCCPA claim. It is unclear which exhibits Plaintiff relies upon in

11

support of her allegations that Defendant's correspondence or other actions

amounted to impermissible debt collection. It is not for the Court to sift through

Plaintiff's forty pages of exhibits in an attempt to discern which items may or may

not support Plaintiff's Count IV claim. For these reasons, Count IV is dismissed

for failure to state a claim.

**Count V: FDCPA Violations**

Plaintiff's Count V alleges that Defendant violated multiple sections of the

FDCPA. Like the FCCPA, the federal FDCPA regulates the collection of consumer

debt in Florida. Plaintiff first contends that Defendant violated §1692e(2)(a) by

falsely representing the character, amount, and legal status of her debt. Dkt. 8 ¶ 86.

Next, Plaintiff states that Defendant engaged in conduct with the natural

consequence of harassment, oppression, or abuse in connection with the collection

of her debt in violation of § 1692d. *Id.* ¶ 88. Lastly, Plaintiff alleges that Defendant

violated § 1692f(1) by attempting to collect an amount not authorized by the

agreement creating the debt. *Id.* ¶ 89.

To prevail on an FDCPA claim, a plaintiff must show: (1) the plaintiff has

been the object of collection activity arising out of a consumer debt; (2) the

defendant is a debt collector under the FDCPA; and (3) the defendant has engaged

in an act or omission prohibited by the FDCPA. *Bentley v. Bank of Am., N.A.*, 773

F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (quoting *Kaplan v. Assetcare, Inc.*, 88 F.

Supp. 2d 1355, 1360−61 (S.D. Fla. 2000)). Defendant contends that it is not a debt collector as defined by the statute. Dkt. 19 at 13−17. Defendant also asserts that Plaintiff has failed to allege that Defendant engaged in debt collection activity under the FDCPA. *Id.* at 17−18.

The FDCPA defines a "debt collector" as "any person" who either (1) "uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts," or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). Plaintiff states that she has established that Defendant satisfies the latter half of this definition, as she alleged that Defendant attempted to collect money from Plaintiff after selling her Loan to Bank United. Dkt. 20 at 13.

Plaintiff's FDCPA claim does not adequately plead Defendant's status as a debt collector. In fact, Count V is entirely silent as to the debt collector element of the FDCPA. Even if the Court were to look beyond Count V, Plaintiff still fails to sufficiently allege that Defendant is a debt collector. While the Court can plausibly infer from the Amended Complaint that debt collection is part of Defendant's business, there is no basis from which the Court can infer that debt collection is its principal purpose. *See Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1317 (11th Cir. 2015) (finding plaintiff failed to sufficiently allege defendant's

13

principal purpose was debt collection under the FDCPA). Similarly, the Amended Complaint does not adequately allege that Defendant regularly attempts to collect debts owed to another, as Plaintiff's own exhibits and allegations demonstrate a period of roughly six weeks during which Defendant did not own her Loan. Dkt. 8 ¶¶ 28−30; Dkt. 8, Exs. K, L, M. Though Plaintiff admits her confusion as to the owner of her Loan, Dkt. 8 ¶¶ 27, 36, she has not shown that Defendant was regularly collecting money that Plaintiff owed to another. As such, Plaintiff has not established that Defendant is a debt collector under the FDCPA.

Even if Plaintiff has sufficiently alleged that Defendant is a debt collector for FDCPA purposes, Defendant is exempt from debt collector status as the originator of Plaintiff's Loan. The term "debt collector" does not include any person attempting to collect a debt due to another "to the extent such activity . . . concerns a debt which was originated by such person." 15. U.S.C. § 1692a(6)(F)(ii). In other words, the FDCPA specifically exempts originators of loans from the definition of debt collector. *See Pinson v. JP Morgan Chase Bank, N.A.*, 646 F. App'x 812, 815 (11th Cir. 2016) (finding that because defendant was the lender on plaintiff's mortgage, defendant fell under the FDCPA's originator exemption).

Focusing on Defendant's status as a creditor rather than an originator, Plaintiff contends that because her Loan was purportedly in default when

14

Defendant purchased it back from Bank United, Defendant is not exempt from debt collector status under the FDCPA. Dkt. 20 at 13−14. Pointing generally to *Davidson*, Plaintiff notes that courts interpreting the FDCPA treat creditors as debt collectors when the debt was already in default at the time the creditor acquired it. *Id.* at 13. Plaintiff's reliance on *Davidson* for this position is misplaced. In *Davidson*, the Eleventh Circuit analyzed the § 1692a(6)(F)(iii) exemption for creditors, not the separate exemption for originators under § 1692a(6)(F)(ii). *See* 797 F.3d at 1313−16.

Plaintiff's Amended Complaint makes clear that her Loan was originated and continuously serviced by Defendant. Dkt. 8 ¶¶ 6, 10; Dkt. 8, Exs. A, K, L, M. Defendant is both a creditor and originator of the Loan. The plain language of § 1692a(6)(F)(ii) suggests that Defendant, as the Loan's originator, is covered by the exemption. Plaintiff does not cite, nor has the Court found, any binding authority finding that the § 1692a(6)(F)(ii) exemption does not apply to an originator who sells a loan, continues to service the loan, and shortly thereafter obtains the loan again through purchase. Accordingly, even if Plaintiff had sufficiently alleged Defendant to meet the debt collector definition under the FDCPA, Defendant remains exempt from debt collector status pursuant to § 1692a(6)(F)(ii). With Plaintiff failing to establish the debt collector element of her FDCPA claim, the Court need not address the remaining two prima facie elements. Plaintiff's FDCPA

claim is dismissed with prejudice.

**Count VI: FCRA Violation**

Plaintiff next assets that Defendant violated § 1681s-2(b) of the FCRA.
Under this section, persons who regularly furnish information to consumer
reporting agencies must conduct an investigation upon receiving notice disputing
the completeness or accuracy of any furnished information. 15 U.S.C. § 1681s-
2(b). This duty to investigate is triggered by a consumer reporting agency notifying
the furnisher that it received notice of a dispute from a consumer. *Id.* § 1681s-
2(b)(1). Plaintiff contends that Defendant violated § 1681s-2(b) by failing to
reasonably investigate her dispute. Dkt. 8 ¶¶ 100, 105−06. However, Defendant
asserts that its duty to investigate was never triggered, as Plaintiff has not alleged
that she notified any consumer reporting agency of a dispute regarding her account
with Defendant. Dkt. 19 at 19. Defendant also notes that Plaintiff has not asserted
that Defendant received notice from a consumer reporting agency of any dispute
raised by Plaintiff. *Id.*

Plaintiff admits that she did not expressly allege that Defendant received
notice of a dispute from a consumer reporting agency. Dkt. 20 at 15. She instead
asks this Court to infer from her summarization of § 1681s-2(b) that Plaintiff must
have submitted a dispute to a consumer reporting agency that, in turn, sent a notice
of the dispute to Defendant. *Id.* (citing Dkt. 8 ¶ 93). The Court will not make this

inference, as Plaintiff has made no direct or inferential allegations to support it. *See Lee v. Caterpillar, Inc.*, 496 F. App'x 914, 915 (11th Cir. 2012) (explaining that while specific facts covering every element of a claim are not necessary, a complaint must contain direct or indirect allegations pertaining to all material elements of that claim). Without any allegations that Defendant received a notice of dispute from a consumer reporting agency, Plaintiff cannot show that Defendant had a duty to reasonably investigate a dispute under the FCRA. She therefore has not pled a material element of her claim. Count VI is dismissed.

## Count VII: FDUTPA Violations

Plaintiff's Count VII alleges violations of sections 501.204(1) and 501.203(3) of FDUTPA. Section 501.204(1) prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, while section 501.203(3) provides that any violation of a law proscribing unfair or unconscionable acts constitutes a violation of FDUTPA. Plaintiff contends that Defendant violated the former by making negative credit references to credit reporting agencies to collect invalid debt and violated the latter through its contravention of the FCCPA as alleged in Count IV. Dkt. 8 ¶ 113.

To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice, (2) causation, and (3) actual damages. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). Defendant asserts that Plaintiff has not

sufficiently alleged an unfair or deceptive practice or actual damages. Dkt. 19 at 20–22 Defendant also contends that Plaintiff's FDUTPA claim is preempted by the FCRA to the extent that it alleges Defendant made negative credit references to credit reporting agencies. *Id.* at 22–23.

The Court agrees that Plaintiff's FDUTPA claim is partially preempted by the FCRA. The FCRA provides that a party cannot bring a claim under the laws of "any State" pertaining to any subject matter regulated under § 1681s-2(b) regarding the "responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). There is a clear consensus among the courts that the FCRA preempts allegations under Florida statutes regarding furnishers' negative credit references to credit reporting agencies. *See Arnold v. Cap. One Servs., LLC*, No. 8:17-cv-1416-T-33AEP, 2017 WL 4355625, at *2 (M.D. Fla. Oct. 2, 2017) (explaining that the majority of district courts in Florida "consistently hold that Section 1681t(b)(1)(F) preempts FCCPA claims . . . based on furnishing inaccurate information to credit reporting agencies" and collecting cases).

In contending that her claim is not partially preempted by the FCRA, Plaintiff points to a case from this district that does not support her position. Dkt. 20 at 19 (citing *Jones v. TT of Longwood, Inc.*, No. 6:06-cv-651-Orl-19DAB, 2006 WL 2789140, at *6 (M.D. Fla. Sept. 26, 2006)). In *Jones*, the defendant car

18

dealership was not a furnisher of credit information under the FCRA,[1] nor was the plaintiff customer alleging incidents of negative credit reporting by a furnisher. *See* 2006 WL 2789140, at *4–6.

Given Plaintiff's FDUTPA claim is preempted as it pertains to negative credit reporting allegations, what remains is Plaintiff's allegation that Defendant violated section 501.203(3) of FDUTPA by violating the FCCPA as alleged in Count IV. However, because the Court dismisses Plaintiff's Count IV FCCPA claim for failure to state a claim, Plaintiff has not alleged a violation of the FCCPA that would support her claim under section 501.203(3) of FDUTPA. Count VII is therefore dismissed.

**Count VIII: TILA Violation**

Lastly, in Count VIII, Plaintiff asserts a violation of Regulation Z, 12 C.F.R. § 1026, which implements TILA. TILA provides a private right of action against "any creditor who fails to comply with any requirement imposed under" the statute. 15 U.S.C. § 1640(a). Plaintiff specifically alleges a violation of § 1026.36(c)(1)(i), which provides in relevant part that "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of

---

[1] "An entity is not a furnisher when it . . . [p]rovides information to a consumer reporting agency solely to obtain a consumer report in accordance with sections 604(a) and (f) of the Fair Credit Reporting Act[.]" 16 C.F.R. § 660.2. Among other entities, section 604(a) covers those obtaining consumer reports for the purpose of extending credit upon an application by a consumer and when there is a legitimate business need related to a business transaction initiated by the consumer. *Id.* § 604(a)(3).

receipt[.]" Plaintiff states that Defendant has violated this section of Regulation Z by failing to credit her periodic payments to her account. Dkt. 8 ¶¶ 123−24. Defendant counters that Plaintiff has not identified any payments not credited to her account or any undue charges added to her account that would support this claim. Dkt. 19 at 23. Plaintiff counters that the factual background section of her Amended Complaint includes detailed allegations to support her TILA claim. Dkt. 20 at 20.

Plaintiff's Count VIII contains no factual allegations. Though Plaintiff asks this Court to look beyond Count VIII to her Amended Complaint's factual background section, it is still unclear on the face of the Amended Complaint which allegations Plaintiff intended to support her TILA claim. At no point does Plaintiff explain what payments Defendant purportedly did not credit upon receipt. Plaintiff only alleges that she made payments between 2016 and 2019, Dkt. 8 ¶ 14, then discusses the fluctuations in the unpaid principal amount of her Loan from 2020 to 2021, *id.* ¶¶ 16−22. With no mentioning of Plaintiff's payments beyond 2019, these allegations regarding her fluctuating unpaid principal amount do not give rise to an inference of Defendant's failure to credit payments upon receipt. Again, it is not for the Court to comb through Plaintiff's forty pages of exhibits to find support for her otherwise conclusory claims.

**CONCLUSION**

In dismissing Plaintiff's Amended Complaint for failure to state a claim, the Court also notes that Plaintiff's Amended Complaint proves difficult to decipher, as each count adopts all of the preceding factual allegations. The Eleventh Circuit has stated that this constitutes "all-too-typical" shotgun pleading, as it requires a defendant to speculate as to which factual allegations relate to which claims. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 n.12 (11th Cir. 2015) (identifying the *Chudasama* complaint as a form of shotgun pleading). "[P]leading claims in this fashion imposes a heavy burden on the trial court, for it must sift each count for allegations that pertain to the cause of action purportedly stated and, in the process, disregard allegations that only pertain to the incorporated counts." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006). Similarly, Plaintiff's sixty-two-page Amended Complaint contains forty pages of exhibits, and it is unclear which exhibits pertain to which claims.

If Plaintiff chooses to file a second Amended Complaint as to her claims dismissed without prejudice, she must clarify which of her factual allegations (and exhibits) support each of her claims rather than simply adopting all previous

21

factual allegations in each claim.[2]

     For the foregoing reasons, Defendant's Motion to Dismiss, Dkt. 19, is **GRANTED**. Plaintiff's Amended Complaint, Dkt. 8, is dismissed with prejudice as to Count V and without prejudice as to the remaining seven counts.

     **DONE AND ORDERED** at Tampa, Florida, on March 8, 2022.


                    */s/ William F. Jung*
                    **WILLIAM F. JUNG**
                    **UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record

---

[2] The Court notes that it retains the authority to dismiss with prejudice shotgun pleadings that have not been corrected despite an opportunity to do so. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).