## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHAWLONDA HALLBACK,

     Plaintiff,

v.                             Case No. 8:21-cv-01028-WFJ-SPF

CARRINGTON MORTGAGE SERVICES,     **DEMAND FOR A JURY TRIAL**
LLC

                                     **INJUNCTIVE RELIEF**
     Defendants.                    **REQUESTED**
_____/

### PLAINTIFF'S SECOND AMENDED COMPLAINT

Shawlonda Hallback ("Hallback" or "Plaintiff") sues Carrington Mortgage

Services, LLC (Defendant), and says:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this proceeding pursuant to

28 U.S.C. §1331, 15 U.S.C. §1692k(d), and 28 U.S.C. §1367 for pendent state law claims.

2.     This action arises out of Defendants' violation of the Fair Credit Reporting

Act ("FCRA"), 15 U.S.C. §1681; the Real Estate Settlement Procedures Act ("RESPA"),

12 U.S.C. §2605(e); the Truth in Lending Act ("TILA") § 12 U.S.C. 10236; the Florida

Consumer Collection Practices Act ("FCCPA"); §§ 559.55-559.785, Florida's Deceptive

and Unfair Trade Practice Act ("FDUTPA"); §501.203, and Breach of a VA Loan

Modification ("Modification").

3.     Plaintiff has Article III standing to bring this action, as she seeks to redress

conduct by Defendants that caused Plaintiff to suffer intangible harms, *See Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," and thus "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)).

4.     Venue is proper before this Court pursuant to 28 U.S.C. §1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendant transacts business in this district.

5.     Plaintiff, Shawlonda Hallback, is a natural person who resides in the City of Brandon, County of Hillsborough, State of Florida, and is a "consumer" as that term is defined by Fla. Stat. §559.55(8), and a person with standing to bring a claim by virtue of being directly affected by Defendant's, Carrington Mortgage Services, LLC, improper loan servicing, among other improper collection activities by Defendant.

6.     Defendant, Carrington Mortgage Services, LLC, is a foreign loan servicing company, and at all times material, serviced loans to individuals and consumers residing in Florida, including Plaintiff.

7.     Carrington Mortgage Services, LLC is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by Fla. Stat. §559.55(6).

8.     Carrington Mortgage Services, LLC is a "debt collector" as defined by Fla. Stat. §559.55(7).

## FACTUAL BACKGROUND

9.      On or about September 23, 2016, Plaintiff refinanced the property (the "Property" or the "Home") that is the subject of the instant action, and which is more fully described below:

> LOT 6, BLOCK 6, CLAYTON SUBDIVISION, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN PLAT BOOK 30, PAGE 37, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.

10.     On September 23, 2016, Plaintiff executed a Mortgage for the refinance of the Property in favor of Carrington Mortgage Service, LLC with a principal amount of $202,952.00. A copy of the mortgage is attached hereto as ***Exhibit "A"*** (the "Mortgage").

11.     The above referenced property is the Plaintiff's homestead, and as such, is afforded certain rights under Florida's Constitution.  Fla. Const. art X, § 4.

12.     Beginning on or about April 1, 2020, Plaintiff entered into a Forbearance pursuant to the Coronavirus Aid, Relief, and Economic Security Act, Public Law 116-136 ("CARES ACT").

13.     On January 29, 2021, Mortgage Electronic Registration Systems, In.c, acting solely as a nominee for Carrington Mortgage Services, LLC, entered into a VA Loan Modification Agreement modifying the terms of the September 23, 2016 Mortgage.  A copy of the VA Loan Modification Agreement is attached hereto as ***Exhibit "B"*** (the "Modification").

14.     From September 23, 2016 through November 2019, Plaintiff made monthly payments in the approximate amount of $1,139.42, with $954.36 representing the amount paid towards the principal, totaling $36,265.68.

15.     After the above payments, Plaintiff's principal balance should have been $166,686.32 as of November 2019.

16.     However, Plaintiff's Mortgage Statement dated November 17, 2020 showed a principal balance of $189,627.63. *See*, ***Exhibit "C"***

17.     Plaintiff's credit report showed a principal balance of $195,320.00 as of January 27, 2021 (the date reported). *See,* ***Exhibit "D"***

18.     Further, the February 2021 modification agreement shows a principal balance of $188,942.48 as of February 1, 2021. *See,* ***Exhibit "B"***

19.     However, on July 26, 2021, Plaintiff's credit report reflected an outstanding balance of $197,096.00. *See,* ***Exhibit "E"***

20.     On the same date, July 26, 2021, Plaintiff's credit report reflects the account was closed and charged off with a principal balance of $200,071.00. *See,* ***Exhibit "F"***

21.     Although, ten days prior, in correspondence sent in response to a Qualified Written Request, Carrington stated the outstanding principal balance was $198,644.58. *See,* ***Exhibit "G"***

22.     Given, the multiple discrepancies contained within Carrington's records, Plaintiff is unable to determine the amounts owed to Carrington.

23.     Further, while Plaintiff's loan was in forbearance, Carrington reported to the credit report companies, negative and incorrect information, despite the CARES ACT requiring Lenders to maintain good standing if they were in good standing prior to Covid, and despite Plaintiff's prior good standing.

24.     Carrington's payment history records contain inaccurate and missing

information, for example, the payment history Plaintiff printed from Carrington's website on March 5, 2021, shows Plaintiff paid $1,369.49 for her December 2020 and January 2021 payments, while Plaintiff's records show she made payments in the amount of $1,207.48 in both months. *See, Composite Exhibit "H"*

25.     As of September 14, 2021, Plaintiff has been informed by Carrington that she has failed to make her mortgage payments beginning in March of 2021 to the present date, despite Carrington's own payment history showing Plaintiff's payments. *See, Exhibit "I"*

26.     Also, Plaintiff is unsure if Carrington owns and/or services her loan due to several Notices of Sale of Mortgage mailed by Carrington to Plaintiff.

27.     On February 3, 2021, Plaintiff received Notice from Carrington that her loan was sold to Bank United, N.A. as of February 2, 2021. *See, Exhibit "J"*

28.     Subsequently, on March 16, 2021, Plaintiff received a second Notice from Carrington that her loan was sold to Carrington, as of March 12, 2021. *See, Exhibit "K"*

29.     Two days later, on March 18, 2021, Plaintiff received a third Notice from Carrington that her loan was sold to Carrington as of March 18, 2021. *See, Exhibit "L"*

30.     If Plaintiff's loan was sold to Bank United, N.A. in February 2021, Carrington does not have the legal authority to sale the loan back to itself.

31.     Further, Carrington is charging unauthorized fees for inspection of the property, for example on June 2, 2021, and again on June 25, 2021, among others, Carrington charged Plaintiff $25.00 for inspection fees. *See, Exhibit "M"*

32.     Plaintiff disputed Carrington's incorrect reporting of her mortgage payments

by submitting the disputes to both the Consumer Financial Protection Bureau and credit reporting agencies (Experian and Equifax). *See, Exhibits "N" and  "O"*

33.     As of July 1, 2021, Carrington's payment history shows $2,042.57 sitting in a suspense account and not applied to Plaintiff's loan. *See, Exhibit "I"*

34.     On February 16, 2021, Carrington charged plaintiff's account $8,981.15 for escrow and $5,450.82 for interest, increasing Plaintiff's principal balance by $14,431.97 to $203,374.45. *See, Exhibit "I"*

35.     The February 2021 modification described this additional amount as new money capitalized interest and clearly defines it as capitalized interest, however this is not accurate per Carrington's history records. *See, Exhibit "B"*

36.     Due to all of the above, Plaintiff cannot determine the amounts she owes, what those amounts represent, and who is the actual owner of her mortgage loan.

37.     As such, Plaintiff has had to hire this firm to protect her rights and has become obligated to pay his attorneys a reasonable fee for services and costs of litigation.

## EVIDENCE OF PATTERN OR PRACTICE OF  RESPA VIOLATIONS BY CARRINGTON

38.     RESPA makes violators liable to individual borrowers for any actual damages to the borrower, as a result of the servicer's violation and additional damages in the case of a pattern or practice of noncompliance with RESPA's requirements. 12 U.S.C. § 2605(f)(1)(A), (B).

39.     As of the time of this Complaint, Carrington has had over a thousand complaints lodged against it nationally related to its mortgages in the last three years.  Each

such complaint is filed and cataloged in the CFPB's publicly accessible online database (https://www.consumerfinance.gov/data-research/consumer-complaints/).

40.    In addition to the CFPB complaints, which demonstrate an extrinsic pattern and practice of non-compliance of mortgage servicing by Carrington against other borrowers, the Plaintiff alleges the acts committed by Carrington as described herein, *supra*, demonstrate a clear pattern and practice of mortgage servicing violations by Carrington in regard to the servicing of the Plaintiff's own loan.

## THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

41.    "The Consumer Collection Practices Act is a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debt-creditor relations." *Laughlin v. Household Bank, Ltd.,* 969 So. 2d 509, 512 (Fla. 1st Dist. App. 2007) (quoting *Harris v. Beneficial Fin. Co. of Jacksonville,* 338 So. 2d 196, 200-01 (Fla. 1976)).

42.    "The FCCPA is to be construed in a manner that is protective of the consumer." *Id.* With this in mind, the FCCPA is meant to be read, "in addition to the requirements and regulations of the federal act [the FDCPA]. In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer debt shall prevail." Fla. Stat. § 559.552.

43.    In addition to actual and statutory damages, the FCCPA also provides for punitive damages. "It clearly appears to have been the intent of the Legislature to provide a remedy for class of injury where damages are difficult to prove and at the same time provide a penalty to dissuade parties . . . from engaging in collection practices which may

have been therefore tolerated industry wide." *Laughlin,* 969 So. 2d at 200).

## Count I: Breach of Contract

44.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-37 above as if fully set forth herein.

45.     The mortgage and modification constitute a valid and binding contract between Plaintiff and Carrington.

46.     Based on the allegations above, Carrington has been the owner and holder of the Loan within the last five years.

47.     Pursuant to Paragraph 1 of the Mortgage, "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note."

48.     Plaintiff sent Carrington multiple notices that Carrington made errors related to the servicing of the loan, specifically related to accounting errors connected to Plaintiff's Mortgage and disputing the amounts alleged to be due and owing, however.

49.     Pursuant to Paragraph 2 of the Mortgage; "all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under Note; (b) principal balance due under the Note; (c) amounts due under Section 3 [Escrowed Amounts] but Carrington never cured the errors.  *See, **Exhibits "G", "N" and "O"***

50.     Further, Carrington breached the terms of the mortgage and modification agreement by failing to properly apply Plaintiff's payments per the mortgage and modification; by attempting to collect late fees when they were not yet due; and by reporting the debt to the credit reporting agencies as "late" when Plaintiff's loan was in

forbearance.

51.     Plaintiff had performed all of her obligations under the Mortgage and Modification prior to Carrington's breach, which has rendered Plaintiff's performance under same to be impossible.

52.     On May 20, 2021, in compliance with the condition precedent, as set forth in Paragraph 20 of the Loan, Plaintiff submitted forwarded correspondence to Carrington disputing the amounts due and owing. *See* **Exhibit "P"**

53.     As set forth in the facts above, the Plaintiff made every payment since signing the Modification Agreement, to ensure she complied with her obligations under the Mortgage and Modification, and she was current on her mortgage payments under the Modification until April 2020, when her loan went into forbearance, since her forbearance ended she has made every payment under the February 2021 modification.

54.     Furthermore, Carrington's communications with Plaintiff have misrepresented amounts due under the Mortgage and Modification by communicating amounts that are inaccurate, excessive, and without any clear reasonable basis.

55.     Carrington has charged the Plaintiff "inspection fees" without reasonable cause.

56.      Carrington's failure to perform its obligations under the contract constitutes Breach.

57.     Plaintiff has suffered damages due to Carrington's Breach in the form of additional principal amounts, additional interest, late fees, inspection fees, damage to her credit, mental distress, attorney's fees and costs. *See, **Exhibit "G"***

**WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment against Carrington for Breach of Contract, award Plaintiff damages, her reasonable attorney fees and costs for prosecuting this action, and any other remedy the Court may find just and appropriate.

### Count II: Breach of Duty of Good Faith and Fair Dealing

58.    Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-37 and 45-57 above as if fully set forth herein.

59.    In every contract there is an implied duty of good faith and fair dealing.  This requires the parties to the contract, including their agents, to exercise good faith and honest judgment in carrying out their rights and obligations under the contract and not to act arbitrarily or with an improper motive.  Good faith is substantial compliance with the spirit and not merely the letter of the contract.  This means that neither party will do anything to unfairly interfere with the right of any other party to the contract to receive the benefits of contract.  *In re Standard Jury Instructions--Contract & Bus. Cases,* 116 So. 3d 284, 321 (Fla. 2013)

60.    "Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox v. CSX Intermodal Inc.,* 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999). *See also Travelers Int'l v. Trans World Airlines, Inc.,* 41 F. 3d 1570, 1575 (2d Cir. 1994)("Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good

faith.").

61.     Plaintiff's account was placed in forbearance pursuant to the CARES Act, therefore no payments were due during the period.  Yet, Carrington reported to the credit bureaus that Plaintiff was more than 30 days late on her mortgage payments.  *See*, **Exhibits "N" and "O"**.

62.     Carrington failed to properly credit Plaintiff's payments.  *See* **Exhibits "H" and "I".**

63.     Carrington charged Plaintiff multiple times unauthorized fees.  *See* **Exhibit "M"**

64.     Therefore, Carrington performs its contractual obligations in bad faith in violation of the implied covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment against Carrington for Breach of Carrington's duty of good faith and fair dealing, award Plaintiff damages, her reasonable attorney fees and costs for prosecuting this action, and any other remedy the Court may find just and appropriate.

### Count III: RESPA Violation of 12 C.F.R. 1024.35(e)(1)

65.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-11, 13-21 and 37-40 above as if fully set forth herein.

66.     12 C.F.R. § 1024.35(a) provides in pertinent part that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower

believes has occurred."

67.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

68.     Plaintiff submitted a minimum of five notice of errors to Carrington through the Consumer Financial Protection Bureau alleging the information related to the servicing of her loan are incorrect, including the monthly payment application and the balance of her loan.

69.     On May 20, 2021, Plaintiff forwarded a qualified written request to Carrington alleging that Carrington made errors related to the servicing of the loan, specifically related to accounting errors connected to Plaintiff's mortgage and disputing the amounts alleged to be de and owning.

70.     "RESPA does not require any magic language before a service must construe a written communication from a borrower as a qualified written request and respond accordingly.   The language of the provision is broad and clear."   *Catalan v. GMAC*

*Mortgage Corp.,* 629 F.3d 676, 687 (7th Cir. 2011)

71.     "To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond." *Id.*

72.     Further, 12 C.F.R. § 1024.35 (e)(1)(i), requires the servicer to conduct a reasonable investigation and notifying the borrower of a correction to the account or that no error was found and to provide an explanation for that conclusion.

73.     Carrington's response dated July 16, 2021 does neither.  It simply disputes the request is a QWR and reiterates the alleged and disputed amounts are due.  *See*, **Exhibit "G"**

74.     By failing to respond to the errors and continuing to assert that Plaintiff's principal balance is correct, Carrington has violated RESPA and 12 C.F.R. § 1024.35(e)(1).

75.     Carrington is liable for finance charges and interest that flow from the failure to properly credit Plaintiff's payments, damage to the Plaintiff's credit ratings, and emotional distress arising from the unjustified collection activity, and unjustified risk of losing her homestead property.

76.     Plaintiff has suffered damages due to Carrington's failure to correct its errors and continues to suffer damages.

        **WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment against Carrington, awarding Plaintiff damages, her reasonable attorney fees and costs for prosecuting this action, and any other remedy the Court may find just and appropriate.

## Count IV: FCCPA VIOLATIONS

77.     Plaintiff realleges and  incorporates the allegations set forth  in paragraphs 1-16, 18, 24-25, 31, 37, and 41-43 above as if fully set forth herein.

78.     Carrington Mortgage Services, LLC is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined Fla. Stat. §559.55(6).

79.     Carrington Mortgage Services, LLC is a "debt collector" as defined by Fla. Stat. §559.55(7).

80.     The Florida Consumer Collections Practices Act ("FCCPA") provides that in collecting consumer debts, no person shall claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. *Fla. Stat.* §559.72

81.     At all relevant times, Carrington, was seeking to collect, from Plaintiff, a debt arising from a mortgage granted by the Plaintiff, secured by the Plaintiff's primary residence, which was a transaction incurred primarily for personal, family, or household purposes.

82.     At all relevant times, in seeking to collect a consumer debt from Plaintiff, Carrington, knowingly and willfully did claim, attempt, and threaten to enforce a debt in amounts which the Carrington, knew to not be accurate in violation of Section 559.72(9) of the Florida Consumer Collection Practices Act.  *See* **Exhibit "M"**

83.     Further, there are several discrepancies with Carrington's records in regard

to the principal balance and payments made by Plaintiff, as described above.  See **Exhibits "H" and "I"**

84.     Thus, Carrington violated Florida Statute, § 559.72(9) because multiple records, as detailed above, falsely represent the amount of the Debt.

85.     As a result of Carrington's actions, Plaintiff has sustained damages.

86.     Carrington's acts and omissions described above are intentional, or at the very least grossly negligent. Accordingly, an award of punitive damages is appropriate in order to deter Carrington from continuing to engage in similar wrongful acts and omissions in the future, and to punish Carrington for its unlawful conduct.

**WHEREFORE**, Plaintiff respectfully requests this Court enter a judgment against Defendant declaring that Defendant violated the Act and an injunction enjoining Defendant from future violations of the Act along with the entire amount of their damages, including punitive damages, together with an award of attorney's fees and litigation costs as actual damages, statutory damages of up to $1,000.00 and such other relief as this court deems just and proper.

## Count V: FCRA VIOLATION

87.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-21, 23, 32, and 37 above as if fully set forth herein.

88.     Upon notification of a dispute over information provided by a consumer reporting agency, a furnisher of information to consumer reporting agencies has a duty to reasonably investigate the disputed information and report any inaccurate or unsupported information to the consumer reporting agency within 30 days. 15 U.S.C. § 1681s-2(b).

89.     A private right of action exists for violations of 15 U.S.C. § 1681s-2(b).

90.     Willful violations of FCRA entitle consumers to recover actual damages, punitive damages, and costs and attorneys' fees.

91.     Negligent violations of FCRA allow consumers to recover actual damages, and costs and attorneys' fees.

92.     Actual damages include, *inter alia*, compensation for time spent trying to resolve the dispute, out-of-pocket expenses, and humiliation, embarrassment, and mental distress.

93.     Carrington is a furnisher of information as contemplated in the FCRA.

94.     Carrington, regularly and in the ordinary course of business, furnishes information to one or more consumer reporting agencies about credit transactions or experiences with consumers.

95.     Plaintiff filed multiple disputes with Equifax and Experian regarding inaccuracy in the amounts reported by Carrington.  *See* **Exhibit "N"**

96.     Equifax and Experian, at all relevant times, regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties.

97.     Equifax and Experian are credit reporting agencies, as defined under FRCA, 15 U.S.C. § 1681(a)(f).

98.     Despite Plaintiff's demand, Carrington failed to communicate to the Credit Reporting Agencies that Plaintiff's loan delinquency reports  were inaccurate.

99.     Due to the inaccurate and adverse information provided by Carrington on the

Plaintiff's credit history, which was subsequently communicated to lenders considering extending credit to the Plaintiff, the Plaintiff suffered significant actual damages.

100.    Because of Carrington's inaccurate reporting, Plaintiff was unable to obtain financing.

101.    Carrington recklessly disregarded its obligations to investigate disputed information under FCRA, continued to report Plaintiff's Loan was being late, and reported inaccurate information to the credit reporting agencies, which was willful, deliberate, and outrageous and violated the FCRA, which justifies the imposition of punitive damages against Carrington.

102.    In the alternative, Carrington negligently violated FCRA by failing to use reasonable care in performing tis duties imposed by FCRA to investigate the accuracy of its reports to the Consumer Reporting Agencies.

103.    Plaintiff is entitled to recover costs and attorneys' fees for bringing this action against Carrington.

**WHEREFOR**, Plaintiff respectfully requests that judgment be entered in her favor and against Carrington along with the entire amount of her damages, including punitive damages, together with interest, attorneys' fees, costs, and such other relief as this Court may deem just and proper.

### Count VI: FDUTPA VIOLATION

104.    Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-16, 18, 24-25, 31, 37, 41-43, and 78-86 above as if fully set forth herein.

105.    Plaintiff entered into a Mortgage Loan in favor of the Defendant, on or about

September 23, 2016 pursuant to Defendant's offer to refinance her prior Mortgage Loan. See, Exhibit A.

106.    Further, on January 29, 2021, Plaintiff entered into a VA Loan Modification, in favor of MERS acting on behalf of Defendant.  See, Exhibit B.

107.    Defendant actively advertised, solicited, and provided a direct mortgage loan which constitutes a commodity or thing of value under FDUPTA.

108.    Carrington's violations of FCCPA, constitute unfair, deceptive, or unconscionable acts and therefore constitute a violation under section 501.203(3).

109.    As a direct and proximate result of Defendant, Carrington's, violations of FDUTPA, Plaintiff, has sustained actual damages in that Plaintiff has been required to expend funds that are not required under her loan, as well as damage to her credit score resulting in either declining to extend credit to her or in higher interest rates.

110.    Further, Plaintiff has been required to retain an attorney for the vindication of her rights and has become obligated to pay her attorney a reasonable fee and costs of litigation for services.


**WHEREFORE** the Plaintiff respectfully requests that this Court enter a judgment against Carrington for actual damages, plus costs associated with this litigation and reasonable attorney's fees, and such other relief as this Court may deem just and proper.

### Count VII: TILA VIOLATION— § 12 CFR 1026.36

108.    Plaintiff realleges and incorporates the allegations set forth in paragraphs 1-

13, 33 and 37 above as if fully set forth herein.

109.    The Truth in Lending Act (TILA), as codified at 12 CFR 1026.36(c)(1), regulates servicing practices and payment processing in connection with a closed-end consumer credit transaction secured by a consumer's principal dwelling.

110.   12 CFR 1026.36(c)(1)(i) provides the following:

> Periodic payments. No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.

111.    Plaintiff discovered discrepancies for her payments made for the months of May 2020 and November 2020, subsequent to a denied credit application for a loan.

112.    Plaintiff disputed these discrepancies through the Consumer Financial Protection Bureau (CFBP) on January 24, 2021 and February 18, 2021 respectively.  *See* **Exhibit "O**

113.    Carrington's payment records show $2,042.57 in suspense as of July 1, 2021. *See* **Exhibit "I"**

114.    Further, in Carrington's July 16, 2021 correspondence a line item for amounts due and owing shows $452.16 as unapplied.  *See* **Exhibit G**

115.    Carrington is a "servicer" as defined by 12 CFR 1024.2(b).

116.    Carrington's initial failure to credit Plaintiff's periodic payments as of the date of their receipt resulted in charges to Plaintiff and the reporting of negative

information to a consumer reporting agency.

117.    Carrington has continued to violate 12 CFR 1026.36(c)(1)(i) by failing to credit periodic payments to Plaintiff's account.

118.    Because of Carrington's failure to correctly apply Plaintiff's payments, Carrington is in violation of TILA.

**WHEREFORE** Plaintiff respectfully requests that this Court enter judgment against the Carrington for actual damages, plus costs associated with this litigation and reasonable attorney's fees, and such other relief as this Court may deem just and proper.

## TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.  *See also* U.S. Const. Amend. 7.   In accordance with the Federal Rules, this jury demand is being filed with the Clerk of the United States District Court for the Middle District of Florida, Tampa Division as required by Fed. R. Civ. P. 5(d) and Fed. R. Civ. P. 38(b).

Dated: April 26, 2022

Respectfully submitted,

Lake Law Firm, P.A.
475 Central Avenue, Suite 402
St. Petersburg, Florida 33701
*Counsel for Plaintiff, Shawlonda Hallback*
smlake@lakelawfirmpa.com


By:  */s/ Sheila M. Lake*
      Sheila M. Lake, Esq.
      FBN: 1009133

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by
First Class U.S. Mail, or Electronically, as appropriate, on April 26, 2022, to:

R. Carter Burgess, Esq.
Carter.burgess@hklaw.com

Daniel Pasky, Esq.
Daniel.pasky@hklaw.com